State v. Shapleigh.

————◦◦◦—————

THE STATE, Respondent, v. SHAPLEIGH *et al.*, Appellants.*

1. So long as goods imported into one of the United States from a foreign country remain in the original unbroken package, the importer may sell the same, in that form, without first taking out a license from the state authorities ; a state law requiring him first to take out a license would be in conflict with the constitution of the United States.

2. The act to tax and license merchants, approved December 11, 1855 (R. C. 1855, p. 1072), does not, when properly construed, require the importer of foreign goods to take out a license to authorize him to sell the same in the original packages.

*Appeal from St. Louis Criminal Court.*

*Gamble, Shepley* and *Hannegan*, for appellants.

*Mauro*, (circuit attorney,) for the State.

* This case was decided at the March term, 1858, of the supreme court.

RICHARDSON, Judge, delivered the opinion of the court.

The defendants were indicted for selling goods as merchants without license. The indictment contains but one count, which charges that the defendants, as partners, on the first day of July, 1856, and on divers other days and times, between that day and the day of finding the indictment, unlawfully did deal, as merchants, without license, at a place occupied by them in St. Louis, in selling hardware not the growth, produce or manufacture of this state, and not unmanufactured articles, the growth or produce of other states.

The defendants demurred to the indictment, but the demurrer was overruled, and they then pleaded not guilty, and under a provision of the revised statutes of 1855, p. 1189, the issue was tried by the court, with the consent of the attorney for the State and the defendants. The facts were agreed, and are as follows : " It is admitted by the defendants that during the time covered by this indictment, the defendants, as co-partners, were engaged in doing business as merchants, and that they did deal in the selling of goods, wares and merchandise at a store occupied by them for that purpose, at the county aforesaid, without a license therefor ; and that, in their dealing as merchants aforesaid, they did sell goods, which were of the growth, produce and manufacture of foreign countries, imported by defendants into the United States, and on which they paid the duties to the United States, and which were sold by them in the original unbroken packages as imported ; and that they sold no other goods than as above specified, and that the goods were as described in the indictment." · There was no other evidence.

The defendants asked the court to declare the law to be " that if the defendants neither received for sale nor sold at their store in St. Louis any other goods except such as were imported by them into the United States from foreign countries, and on which they had paid the duties to the United States on their importation, and which were sold by them in the original unbroken packages, as imported, then the defen-

dants are not guilty, and the court will so find." But the court refused to give the instruction, and declared the law thus : " If defendants were co-partners, doing business as merchants, and during the time covered by the indictment did, at St. Louis county, deal in the selling of goods, wares and merchandise, as described in the indictment, the growth, produce or manufacture of any foreign country beyond the limits of the United States, at a store occupied by them for that purpose, without a license authorizing them to deal, they are guilty as charged in the indictment. For whether the merchandise sold by defendants was sold in the original or unbroken packages, and whether defendants themselves imported the goods into the United States and into this state from any foreign country without the limits of the United States, and paid the legal import duties of the United States charged upon the same, are immaterial questions in this prosecution."

The defendants were found guilty, and have brought the case into this court by appeal.

All the legislation of the state that affects this case is contained in the act to tax and license merchants, approved December 11, 1855. The first section defines a merchant to be any person or co-partnership of persons who shall deal in the selling of goods, wares and merchandise, at any store, stand or place occupied for that purpose. The next section prohibits any person from dealing as a merchant without a license first had and obtained according to the requirements of the act, under the penalty of forfeiting, for every offence, not less than fifty nor more than five hundred dollars, to be recovered by indictment. By the third section merchants are required to pay an *ad valorem* tax, equal to that which is levied on real estate, upon all goods, wares and merchandise purchased by them, except such as may be the growth, produce or manufacture of this state, and except such unmanufactured articles as may be the growth or produce of other states. The fourth section prescribes that " any person or co-partnership of persons applying for a license to

vend merchandise shall, before he or they shall receive such license, execute a bond to the state with two or more good and sufficient securities, who shall be freeholders at the time, conditioned that he or they will, on or *before the first day* of November next following, pay to the collector of the proper county the tax due upon such license." It is made the duty (sec. 6) of every person or co-partnership of persons, on the first day of November of each year, who shall have obtained a license as provided in the previous section, to file in the office of the clerk of the county court, in which the license may have been granted, a statement of the amount of all goods, wares and merchandise received for sale by him or them within the year then ending, excepting such as may be the growth, produce or manufacture of this state, and excepting such unmanufactured articles as may be the growth or produce of other states ; and the seventh section requires that the statement shall be verified by affidavit.

It is admitted that during the time covered by the indictment the defendants only sold, in the original unbroken packages as imported, such goods as were of the growth, produce and manufacture of foreign countries, imported by them, and on which they paid the duties to the United States ; and the question now to be decided is, whether the legislature of this state can consistently with the constitution of the United States require the importer of foreign merchandise to take out a license before he can lawfully sell the same in the condition in which it was imported.

This identical question was before the supreme court of the United States, in the case of Brown v. State of Maryland, 12 Wheat. 419, and it was decided by that court that the exercise of such a power by a state was repugnant to that clause of the constitution which declares that " no state shall lay any impost or duties on imports or exports," and also to the clause which empowers " Congress to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." In that case Brown was indicted for violating an act of the legislature of Maryland, which

required that all importers of foreign merchandise, selling the same by wholesale, bale or package, hogshead, barrel or tierce, should take out a license before they were authorized to sell. The opinion of the court was delivered by Chief Justice Marshall, and it was held that an impost or duty on imports was a custom or tax levied on articles brought into the country ; and though it was most usually secured before the importer was allowed to exercise the rights of ownership over them, it would not be less an impost or duty if it were levied on the articles after they arrived ; and that the practice of levying or securing the duty before or on entering the port did not limit the power to that state of things ; that imports are things imported, the articles themselves, which are brought into the country, and that " a duty on imports" then was not merely a duty on the act of importation, but was a duty on the thing imported ; that an article imported under the authority of an act of Congress continued to be a part of the foreign commerce of the country while it remains in the hands of the importer for sale in the original bale or package in which it was imported ; that the right to import necessarily carried with it the right to sell the imported article in the bulk and shape in which it was imported ; and that no state, by direct assessment or by requiring a license before the importer was permitted to sell, could impose any burdens on him or the property beyond what the law of Congress had imposed ; and that this righ tcontinued so long as the package was unbroken and remained the property of the importer ; but that when the original package was broken up for use or for retail by the importer, or passed from his hands to a purchaser, it ceased to be an import or a part of foreign commerce. The learned judge then concludes, that " any penalty inflicted on the importer for selling the article in his character of importer must be in opposition to the act of Congress, which authorizes importation. Any charge on the introduction and incorporation of the articles into and with the mass of property in the country must be hostile to the power given to Congress to regulate commerce, since an essential

part of that regulation and principal object of it is to pre-scribe the regular means for accomplishing that introduction and incorporation."

This case came under review in the license cases, (5 How. 504,) and the passenger cases, (7 How. 283,) and instead of being overruled, as has been asserted, it was expressly ap-proved and affirmed by a majority of the judges, so far at least as it maintains the exclusive power of Congress over foreign commerce. Chief Justice Taney, in the license cases, observes, that he argued the case of Brown v. Maryland for the state, and, though he thought at the time that the court restricted the powers of the state more than a sound construc-tion of the federal constitution warranted, that further and more mature reflection had convinced him that the rule laid down by the court was a safe and just one, and perhaps the best that could have been adopted for preserving the rights of the United States on the one hand, and of the state on the other, and preventing collision between them. And he then remarks that " goods imported, while they remain in the hands of the importer in the form and shape in which they were brought into the country, can, in no just sense, be re-garded as a part of that mass of property in the state usually taxed for the support of the state government; * * * and a tax upon them while in this condition for state purposes, whether by direct assessment or indirectly by requiring a license to sell, would be hardly more justifiable in principle than a transit duty upon the merchandise when passing through a state."

This case falls directly within the principle established in Brown v. Maryland, and as long as that case stands in the court that decided it, it is our duty to respect it. State legis-lation must yield to the commanding authority of the consti-tution of the United States, and whilst in construing our own laws and constitution we recognize no higher authority than this court, we feel bound in all judicial questions affected by the laws of Congress and the federal constitution to follow the decisions of the supreme court of the United States,

23—VOL. XXVII.

whose duty it is to expound them. Therefore, as we are bound by the decisions of that court on such questions, whether as individuals we concur or not in their reasonings or conclusions, it is unnecessary for us to extend this opinion by any views of our own, either in favor of or against the doctrine of Brown and Maryland. It is decisive of this case, and that is sufficient for us.

It is not necessary, however, for the decision of this case to declare the statute unconstitutional on which the indictment was framed, for it may stand and be executed in perfect harmony with this opinion. The act does not in terms declare that the importer of foreign merchandise shall take out and pay for a license to secure the privilege of selling, when he proposes to sell only in the original package; neither does it require the merchant to include in his statement goods expressly exempted by the constitution of the United States from the burdens imposed by state laws on other goods; and it will not be presumed that the legislature sought to do what it had no power to do, or that it attempted to abridge or invade private rights secured by the paramount law of the land. But if the importer breaks up the original packages for sale or for use, or changes the form in which they were imported, or they pass into second hands, the goods will lose their distinctive character as imports and become subject to the taxing power of the state, and in such cases nothing that has been said will protect an article so acted upon by the importer.

This view of the subject was taken by this court at an early day, in the case of the The State v. Tracy & Wahrendorf, 3 Mo. 3. The defendants in that case were indicted for violating the act of March 1st, 1825, which required that all merchants should pay a tax on their whole stock in trade except such goods as were the growth, produce or manufacture of this state; and provided that before any person should receive a license to vend merchandise, he should deliver to the collector of the proper county a complete statement in writing of all the goods, wares and merchandise, except as

aforesaid, received at his store, &c.   No exception was made by the act in favor of imported goods.   It was objected that the indictment was defective because the offence charged was not necessarily unlawful, inasmuch as the selling of goods without license was legal or illegal according to the kind of goods sold and the manner of selling them.   But the court, recognizing the binding authority of Brown and Maryland, held the indictment sufficient, and that if the defendants sold only such goods as they could lawfully sell without license from the state, their defence would be available on the trial, where " they could move the court to exclude all evidence of such sales as they might lawfully make.

In our opinion the demurrer was properly overruled; but the court ought to have given the instruction prayed by the defendants, and refused the instruction that was given.   All the facts being admitted, the case stood as upon a special verdict, on which the defendants were entitled to a judgment in their favor.   Judge Scott concurring, the judgment of the criminal court will be reversed, and the defendants discharged from their recognizance.