## STATE v. CHAPMAN et al.

1. When an application is made for a change of the trial judge, as provided in Sess. Laws 1890, c. 78, § 20, on account of bias and prejudice, the party making the application must establish such facts and circumstances, by affidavit or other extrinsic testimony, as clearly shows the extrinsic of bias and prejudice on the part of the judge against the defendant as to raise a strong presumption that a fair and impartial trial cannot be had before such judge. It must be of such a showing, and strong enough to overthrow the presumption in favor of the integrity of the trial judge, before a change will be made.

2. The extent to which a party should be allowed to go on the examination of a person called as a juror, is not and cannot well be governed by any fixed rules. Much rests in the discretion of the court as to what questions may or may not be answered; but in practice very great latitude is and generally ought to be indulged.

3. The decision of the trial judge on the question of indifference of a juror, or for actual bias, is not reviewable in this court, except in the absence of any evidence to support it, in which case it is an error of law to which an exception lies.

4. A general and vague assignment of an error will not be considered by this court. A party complaining of error must specify it with precision. It should be specific and explicit, so that by looking at the grounds stated the court can at once see how, when, and where the error arises, and whether it is well or ill taken.

5. All places where intoxicating liquors are sold, bartered, or given away in violation of law, also all places where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, and also all places where intoxicating liquors are kept for sale or delivery in violation of law, whether they are sold, bartered, or delivered, or

not, are common nuisances, under Sess. Laws 1890, c. 101, § 13. It is the illegal sale, or the illegal keeping, or the permission for persons to resort to a place for the drinking of intoxicating liquors as a beverage that makes the common nuisance, and when either one or all are proven the offense is made out.

6. When a sale of intoxicating liquors is admitted or proven to have taken place by the defendants, before they can avail themselves of the shield or immunity from the state law by the decisions of the supreme court of the United States, under the interstate commerce clause of the constitution of the United States, they must show (1) that they are foreign importers or the agents of a foreign importer of beer or liquors; (2) that as such importers or agents they received an importation of beer or liquors from another state or foreign country; (3) that they are, as such importers or agents, selling this importation by the original unbroken package in which it was imported; (4) that they are not making their house of business a tippling concern for the rendezvous of persons, bringing it within the police power of the state to declare it a nuisance.

7. The burden of establishing these facts is upon the defendants, and the failure to establish any one of them makes the defendants amenable to the state law.

8. When bottles of whisky or beer are each sealed up in a paper wrapper, and closely packed together in uncovered wooden boxes furnished by the importer, and these wooden boxes are marked to the address of the agents, and shipped from one state to another, the wooden boxes, and not the bottles, constitute the original package within the meaning of the decision of the supreme court of the United States.

(Syllabus by the court. Argued Oct. 7, 1890. Opinion filed Dec. 18, 1890.)

Error to Lincoln county court. Hon. A. G. STEINER, Judge.

Information against the defendants for violating the intoxicating liquor laws. Verdict of guilty rendered and a sentence of both fine and imprisonment made. They bring error to this court. Affirmed.

The facts are fully stated in the opinion.

*Winsor* and *Kittredge*, for appellants.

When a party applying for a change of judges under § 20, Chapter 78, Laws of 1890, files an affidavit setting forth that the judge is biased and prejudiced in the case and against him, it is his absolute right to have another judge called in to try the case. Runals v. Brown, 11 Wis. 185; Baldwin v. Marygold, 2 Wis. 419; Risto v. Harris, 18 Wis. 40^; Iron Co. v Crane, 29 N. W. 654; State v. Hale, 22 N. W. 682; Cory v. Sil-

cox, 5 Ind. 370; Freliegh v. State, 8 Mo. 606; Witter v. Taylor, 7 Ind. 110.

It is an abuse of discretion for a court to allow a challenge to a juror for cause where no bias, prejudice or opinion either formed or expressed is shown. Comp. Laws, §§ 7350, 7358, 7361.

The court erred in giving the instruction to the jury requested by the prosecution and in refusing to give the instruction requested by the defendants, relating to original packages. Leisy v. Hardin, 135 U. S. 124; Habeas Corpus Cases, 42 Fed. 545; Bowman v. Railroad, 125 U. S. 507; Collins v. Hill, 41 N. W. 571.

*Robert Dollard, Attorney General,* for defendant in error.

BENNETT, J. The plaintiffs in error were informed against in the county court of Lincoln county, for keeping a common nuisance in the city of Canton, County of Lincoln, by selling intoxicating liquors as a beverage, and wilfully and unlawfully permitting persons to resort to the room and building where said liquors were sold. Before the commencement of the trial, the defendants applied for a change of judges, on the ground that the judge of said county court was prejudiced against the defendants, and filed the affidavits of defendants, together with that of several other citizens of Lincoln county, stating that they believed that said judge was prejudiced. After a statement of the judge was filed, the court denied the application, stating that the affidavits set out no facts upon which to predicate the fact, or upon which to form a belief of the prejudice alleged to exist in the judge, but that they simply expressed a conclusion. Afterwards, and against the protest of the defendants, a jury was impaneled in the case, and a trial was had, and a verdict of guilty was rendered against the defendants, and they were sentenced each to pay a fine of $150 and the costs of the prosecution, and to be imprisoned in the county jail for sixty days. A motion for a new trial was duly made and overruled, and afterwards the cause was brought to this court by writ of error. The assignments of error are: (1) In denying defendant's motion for a change of judges in the trial of said action. (2) In rejecting

and admitting evidence on said trial, as appears by the bill of exceptions. (3) In refusing defendants' first and fourth requested instructions to the jury. (4) In instructing the jury as requested by the prosecution. The application for a change of the trial judge was based upon the following affidavits: "William Koller and George H. Chapman, being first duly sworn, severally say that they are defendants in the above entitled action, and that A. G. STEINER, the county judge of said county, is prejudiced and biased in said action against them, and that they cannot have a fair and impartial trial before said court while said judge is presiding. [Signed] WILLIAM KOLLER. GEORGE H. CHAPMAN. H. C. Hichborn, E. C. Stillwell, M. H. Hermanson, E. J. Kean, F. P. Smith, and N. M. Jacobson, being first duly sworn, say that they have read the foregoing affidavit of William Koller and George H. Chapman, and know the contents of the same, and that deponents are residents of the county of Lincoln and State of South Dakota, and are acquainted with the defendants and said county judge referred to in said affidavits, and that deponents verily believe said affidavits are true." Signed by each affiant. Upon the presentation and hearing of the application and affidavits, the application was denied, as follows: "This application coming regularly up for hearing before the court: Ordered, that the same be, and it is hereby denied; to which order the defendants severally excepted, which exception is allowed; the affidavit setting out no sufficient facts, but simply conclusions. By the court, A. G. STEINER, Judge."

Was this denial error? Section 20, c. 78, Laws 1890, under which the application was made, provides: Whenever it shall appear "to the satisfaction of the court," by affidavit or otherwise, that a fair and impartial trial cannot be had in such court by reason of the bias or prejudice of the judge, or otherwise, the court shall call the judge of another county to try the case. Bias and prejudice of the presiding judge to such an extent that a fair and impartial trial cannot be had is sufficient cause to entitle the defendant to have a change in the

judge; but, before this can be done, these facts must appear to
the satisfaction of the court by affidavit, etc.   The affidavits in
support of such a motion must state facts and circumstances
from which the conclusion is deduced  that a fair and  impar-
tial trial cannot be had.   The conclusion is to be drawn by the
court, and not by the defendant and his witnesses, and the court
must be satisfied from the facts and  circumstances  positively
sworn to in the affidavits, and not from the general conclusions
to which a defendant may swear.   This is the rule laid down
in the case of Territory v.  Egan,  3  Dak.  125, 13 N. W. Rep.
568, and also in the case of  People v.  McCauley, 1 Cal. 383;
rendered under a statute differing but slightly from  our  own,
but which is clearly capable of receiving the same construction,
as the meaning and requirements are unquestionably the same.
The one says, ''Whenever it shall appear  to the satisfaction of
the court;'' the other says, ''If the court be  satisfied  that  the
representations of the defendant be true,'' the  removal may be
made.   The contention of  the  appellants  is,  however, that
when an affidavit is filed setting forth absolutely that the judge
is prejudiced, it is an absolute right of  the defendant  to  have
another judge called in, and it is the bounden duty of the court
to call another judge.   This cannot be.   The statute does not
allow him to change the judge unless the court is satisfied that
his bias and prejudice is so great that an impartial trial cannot
be had, and he is not bound to grant a  change on  the  mere
affidavit of the defendant, even though supported  by others,
that he believes the judge is prejudiced, or that he is so in fact.
Statutes bearing upon questions of  this character  differ  very
essentially in their wording and  construction.   There are
those that allow a change of  judge  or  venue  of  the case on
an affidavit of  defendant that  he believes the  judge is so
prejudiced against him that he cannot have a fair  and  impar-
tial trial; others that he is so  prejudiced.   These statutes usu-
ally make it imperative that  the change  should be made, and
no discretion is left in the  court.   The  whole  matter  is left
with the conscience of the affiant, and  when  an  affidavit  ful-
filling the requirements of the statute  is filed the change must

be made, and the truth of the matter is not open to question. But the statute under consideration is radically different. This fact must be made "to appear to the satisfaction of the court," by affidavit or otherwise. This fact may be established like any other fact, and it would be competent for the county court to receive evidence upon the point, by affidavit, or by deposition, or by means of oral examination of witnesses in its presence. The words, "to the satisfaction of the court," do not mean simply the sufficiency of the affidavit or other proof, but go to the quieting of the mind of the judge,—go to the freedom to act according to one's judgment on the question of bias and prejudice. The statute does not allow him to vacate his seat and call in another to fill it unless he is satisfied that the allegations of the affidavit, or otherwise, are true. In this regard he may take into consideration his own personal knowledge of the fact. If the personal knowledge of the judge is ignored it will often place him in a position of being compelled to find that to be a fact which he knows not to be a fact,—a fact which carries with it something of an imputation upon himself.

Again, if it were to be determined simply by the affidavit of the defendant, and that, too, only making the allegation of bias and prejudice in general terms, and no statement of facts or circumstances from which these might be deduced, there would be almost numberless changes of judges. Every defendant closely pressed would seek delay in this manner. It is only when the necessities of justice require it that a change as contemplated in the statute should be made. Otherwise a great wrong upon the public would be perpetrated. These changes work delay; they cause expense; they endanger prosecutions. A defendant is easily persuaded of the prejudice of the judge. Adverse rulings convince him of the fact. An idle or thoughtless remark made out of court; some previous business transaction where perhaps a wrong may seemingly have been perpetrated. Belonging to opposite political parties, or different churches; different views upon moral, social, or economic questions,—all aid a defendant in arriving at the conclusion that the judge has a bias or prejudice against him. It seems to us,

therefore, that this is the true rule: That such facts and circumstances must be proven by affidavit, or other extrinsic testimony, as clearly shows the existence of a bias or prejudice on the part of the judge against the defendant, and, unless this bias and prejudice thus clearly appears, the appellate court will sustain the overruling of the application. It must be such a showing, and strong enough to overthrow the presumption in favor of the integrity of the trial judge. In these conclusions we are supported by the following list of cases: People v. Mahoney, 18 Cal. 181. Judge BALDWIN, in delivering the opinion of the court, said: "The mere affidavit of the defendant does not render it obligatory on the court to change the venue. The statute declares: 'If the court be satisfied that the representations of the defendant be true, an order shall be made for removal,' etc. It is evident, therefore, that the court is not bound to take for granted the unsupported statement of the defendant, and assign it conclusive effect. A reasonable discretion is to be given to it on this subject, and while we should not be disposed to hold an arbitrary refusal to change the venue as warranted, yet we think the mere unsupported assertion of the defendant that he was the victim of a general prejudice in the county is not conclusive reason for changing the venue, when it is so easy to obtain corroboration of the statement, if it were really true." In the case of Posey v. State, 73 Ala. 491, the court says: "We have no jurisdiction of applications for change of venue. They must depend on the enlightened intelligence of the trial court. It is, nevertheless, a right, secured to defendants in criminal prosecutions, to have a fair and impartial trial, and to this end he must set forth reasons why such trial cannot be had without a change of venue. Of the sufficiency of the reasons shown the trial court must determine. If it be shown to the reasonable satisfaction of the court that an impartial trial and an unbiased verdict cannot be reasonably expected, the venue ought to be changed." To the same effect are Table Mountain Gold, etc., Min. Co. v. Waller's Defeat Silver Min. Co., 4 Nev. 218; State v. Gordon, 3 Iowa, 410; State v. Barrett, 8 Iowa, 539. The same construction is given the

statutes upon applications like the one under consideration in the cases of Findley v. State, 5 Blackf. 576, under a statute which used the words "at the discretion of the court;" Spence v. State, 8 Blackf. 281, under a statute which used the words "fair and sound discretion;" Millison v. Holmes, 1 Smith, (Ind.) 55; Boswell v. Flockheart, 8 Leigh, 364; Poe v. State, 10 Lea, 674—under a statute using the words "to the sound discretion of the court." In the case of Malone v. Railroad Co., 35 Fed. Rep. 625, the right of removal under the prejudice or local influence clause of the act of congress of March 3, 1887, came squarely before the court. That clause provides "that when it shall be made to appear to said circuit court that from prejudice or local influence he [the defendant] will not be able to obtain justice in such state court" a removal may be had. Justice HARLAN, delivering the opinion, says: "I am of the opinion that congress did not intend to invest the circuit court of the United States with authority to take cognizance of a case pending in a state court, upon the grounds of prejudice or local influence against the defendant, a citizen of another state, unless the circuit court, in some proper way, found as a fact that such prejudice or local influence existed; and the simple affidavit of an officer of a defendant corporation, stating in general terms that it cannot from prejudice or local influence obtain justice in the state court, * * * ought not to be accepted as sufficient evidence of that fact." We have carefully and fully considered the act of congress in relation to the removal of causes from state to federal courts on account of prejudice and local influence, and also to the able and exhaustive opinions of the federal courts construing such enactment, to which our attention has been called by appellants, in the additional brief filed in the case of State v. Rodway, now pending in this court, where the same question arises. In the case of Fisk v. Henarie, 32 Fed. Rep. 417, to which our attention is especially directed, Judge DEADY held that when an affidavit made by defendant in conformity with the act of congress of 1867 is filed he was entitled to a removal. He said: "In case of a removal under the subsection, [that is, the prejudice and local influence

clause of the act of 1867,] the party seeking it is required to make an affidavit to the effect that he believes he cannot obtain justice in the state court on account of prejudice or local influence. The act of 1887, however, only provides that such fact 'shall be made to appear' to the circuit court, but as to whom or how it shall be made to appear, or how such removal may be effected, it is silent. This class of cases is expressly excepted from the operation of Section 639, Rev. St., as relates to the method of removal on account of prejudice or local influence, and the proof is not, therefore, in conflict with the act of 1887, and is therefore still in force, and applicable to such removal. And thus in the mode provided by the statute it appears to the court, from the affidavits of the defendants Hiram and Eleanor Martin, that from prejudice and local influence the defendants will not be able to obtain justice in the state courts." It was under this construction of the laws of congress in relation to the subject of removals, that that learned judge said: "It is sufficient that they have made oath that they so believe, without setting forth the facts and circumstances on which such belief is founded." Whether he construed these laws correctly or not is not for us to say. This construction has been controverted by Judge BREWER, in the case of Short v. Railway Co., 34 Fed. Rep, 225, and approved by Judge NEWMAN, in the case of Hills v. Railroad Co., 33 Fed. Rep. 81, and entirely ignored by Justice HARLAN, in the case of Malone v. Railroad Co., 35 Fed. Rep. 625. This decision, in the mind of the judge, was based upon the law of 1867, which left no discretion with the state court in ordering a removal when an affidavit was filed in accordance with the requirements of the statute. If this was so, the decision of Judge DEADY in Fisk v. Henarie, *supra*, could have no application to the case under consideration, because the statute made it imperative to make the removal upon filing the affidavit required. No error appearing upon this branch of the case, we will proceed to the consideration of the remaining assignments of error.

The next matter in which it is alleged the court erred, is the sustaining of the challenge for cause by which the juror

Hermanson was excused. This juror was called to serve in the cause, and, upon being sworn to answer as to his qualifications to serve in that capacity, the following question was asked him by the attorney for the state: "Question. Do you know anything about either of these defendants keeping a nuisance,— that is, keeping a building on the corner of Main and Seventh streets, in Canton, on block 24. in which intoxicating liquors were sold, or kept for sale, or people resorting there to drink? Answer. What building do you mean? Q. The building known as the 'Handschingle building.' A. It has been sold there, I know, by Koller." Whereupon the state challenged the juror for the reason that juror states that he knows that liquors have been sold in the building by one of the parties. This challenge was resisted by defendant. The challenge was allowed by the court without further material evidence, to which ruling an exception was taken. It may be said, generally, that the extent to which a party should be allowed to go on the examination of a person called as a juror is not and cannot well be governed by any fixed rules. Much rests in the discretion of the court as to what questions may or may not be answered, but in practice very great latitude is and generally ought to be indulged. Section 7350, Comp. Laws, says: "A challenge to a juror is either peremptory or for cause." Section 7358 gives two causes of challenge: (1) Implied bias; (2) actual. bias. Section 7359 states the existence of facts which constitute implied bias, none of which are shown in this case. Section 7358, subd. 2, defines actual bias to consist in the existence of such a state of mind, on the part of the juror, which satisfies the court, in the exercise of a sound discretion, that such juror cannot try the issues impartially, and without prejudice to the substantial rights of the party challenging. It is substantially what was formerly known in the New York practice as a cause of challenge to the polls for favor, the question being as to the indifference of the juror, as a matter of fact, as distinguished from challenge for principal cause. Section 7439, Comp. Laws, however, explicitly confines exceptions which may be taken by a defendant, on the trial of an indictment, to those taken to the

decisions of the court on matters of law, "and not otherwise, in the following cases: (1) in disallowing a challenge to the panel of the jury; (2) in admitting or rejecting testimony on the trial of a challenge for actual bias to any juror; (3) in admitting or rejecting witnesses or testimony, or in deciding any question of law, not a matter of discretion, or in charging the jury." It will be observed that by this section that an exception lies to the improper admission or exclusion of evidence on the the trial of a challenge to a juror, or as a matter of law in which the court erred in allowing or disallowing a challenge. But no right is given to except to the decision of a judge on the facts, and we find no provision in the Code for a review of decisions on the trial, other than those to which an exception lies. It seems, therefore, that the decision of the trial judge on the question of indifference of a juror, or for actual bias, is not reviewable, except in the absence of any evidence to support it, in which case it is an error of law to which an exception lies. The question raised on the exception to the decision of the court in sustaining the challenge to the juror Hermanson turns, therefore, upon the point whether the evidence disclosed a condition of mind on his part which, as matter of law, rendered him an incompetent juror by reason of actual bias. That evidence shows that he knows of his own knowledge that one of the defendants sold intoxicating liquors in the building, as described in the indictment. This fact might be one of the important elements of the crime of which the defendants were charged. The theory of the law is that a juror who has formed an opinion cannot be impartial. In this case no opinion of the juror was expressly developed on the examination. An opinion is based upon knowledge of facts. The courts are not agreed as to the knowledge upon which the opinion must rest, in order to render a juror incompetent. Every opinion which he may entertain need not necessarily have that effect. But if a juror has positive knowledge of the facts which are essential to make up a crime, it is a very strong presumption that he has, at least, from that knowledge formed an opinion upon that matter. It is clear that upon a trial of this issue of fact raised

by a challenge for such a cause, the court will practically be called upon to determine whether this knowledge of the facts on the part of the juror raises the presumption of partiality or not. The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that character; and the finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless it is made to clearly appear from the evidence that a contrary finding should have been made. The case must be one in which it is manifest that the law left nothing to the "conscience or discretion" of the court, which is not evident in this case.

The next assignment of error is as follows: "In rejecting and admitting evidence on said trial, as more particularly appears by a bill of exceptions." This is very general and vague. General, because it requires the court to go through and scan the whole bill of exceptions, and note here and there every question asked and answered to which objections were interposed, and exceptions to the rulings of the court filed, during the trial. It is vague, because the purport and design of the objection is not clearly stated, and is so indefinite and inexplicit that it does not present any particular points of error for review. The party complaining of error should, in the assignment, specify the errors with precision. It should be specific and explicit, so that, by looking at the grounds stated, the court can at once see how or when they arise, and whether they are well or ill taken. The ground stated should refer to some particular error of the court below in admitting or rejecting certain testimony, or in making a decision in matters of law during the trial. The office of an assignment of error is to point out some specific error in law, and the party making it should lay his finger upon the precise request refused, or the error complained of; not only that the court may, upon the error being pointed out, correct it, but also that the appellate court may not be left to spell out and dig up errors which, oftentimes, after discovery, are more apparent than real, and may have arisen from a mere inadvertence or a misapprehension

upon the trial.   For the reason above stated we shall not consider this assignment of error.

This seems a very opportune time when the above rule in relation to assignments of error may be promulgated, because, by the refusal to consider this assignment, the rights of the defendants have not in the least been impaired; but in the future it will be adhered to by this court in the consideration of cases brought to it for review, let the consequence to parties litigant be what it may.   We will state, however, that the appellants in their brief only ask for the consideration of this court upon the exception taken to but one question allowed to be answered by a witness after objection was made to it.   The question was:   "Now then, I call your attention to the place where the drinking was done; did they drink out of bottles, or did they have glasses or other means of drinking?"   This was objected to by appellants for the reason that no proof had been shown of the occupation of this part of the building by the defendants in any way, and, until it is shown, it is incompetent, and the fact that people drink there is no evidence of these defendants' occupying that part of the building.   From the view we have taken of this case, as will be seen subsequently, the occupancy of the adjoining room to the one in which the beer and liquors were sold, whether by defendants or not, was not material to make out the offense as charged.   The statutes declare that "all places where intoxicating liquors are sold, bartered, or given away, in violation of any of the provisions, * * * or where intoxicating liquors are kept for sale, barter, or delivery in violation of this act, are hereby declared to be common nuisances."   It is the illegal sale, or the illegal keeping of intoxicating liquors in a place that makes it a common nuisance, and when either one or both are proven the offense is made out.   That statute also provides that a place where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage is also a common nuisance.   It may be that the purpose of the above question was to show this fact.   It is true that the rule is that the evidence offered must be confined to the issues.   It is not necessary, how-

ever, that the evidence should bear directly upon the issue. It is admissible if it tends to prove the issue, or constitute a link in the chain of proof, although alone it might not be considered material; nor is it necessary that its materiality or relevancy should appear at the time when it is offered, it being the usual course of the trial judge to receive evidence at any proper or convenient stage of the trial, and, if it is not subsequently, by other evidence, connected with the issues, it can be stricken out on motion. The evidence sought to be introduced by the question, standing alone, would not, possibly, be material or relevant to prove that defendants occupied the rooms where the drinking took place; yet this in no manner affected the other issues, viz., the sales and keeping of the intoxicating l'quor, and was not prejudicial to defendants' rights. Error without prejudice is no ground of reversal.

The third assignment of error is "in refusing defendants' first request to charge the jury," which was as follows: "You are instructed that, if the defendants did not have any control or supervision of the back room of the Handschingle building that has been described by the witnesses, and that said room was under the control of other persons, then the defendants are not guilty of keeping a place where people resorted for the purpose of drinking." The instruction was clearly wrong, and should not have been given. The defendants were informed against for keeping a common nuisance—not for keeping a place where people resorted for the purpose of drinking. True, keeping such a place, under the statute, would make it a nuisance, yet this was not the only thing that made the offense complete. The keeping of intoxicating liquors or beer for sale, barter, or for delivery in violation of law, in any given place, constitutes a nuisance. The mere keeping of them for sale, for barter, or to deliver, makes the place where kept a nuisance. So does the selling, bartering, or giving them away make the places where sold. bartered, or given away nuisances.

The fourth and fifth assignments of error will be considered together, because the sustaining of one and overruling of the other is virtually overruling and sustaining the opposite.

The fourth instruction of the prosecution given by the court was as follows: "If you find that the defendants received an open wooden box containing a number of bottles of whisky or beer, and each bottle wrapped in paper, or incased in a pasteboard box, and the defendants took these bottles out of the box and sold them separately, in taking them out of the wooden box they broke the original package; that the wooden box, and not the bottles which it contained, was the original package." The instruction refused to be given, as requested by the defendants, is as follows: "You are further instructed that if intoxicating liquors were shipped to defendants from another state, in open boxes containing a number of bottles, which bottles could be removed by simply lifting from the box, and without breaking any cover or part of the box, then such bottles are original packages, and could be sold by defendants, and by such acts alone would they become mingled with the common mass of property of the state." The appellants concede the fact that the constitution and laws of this state make it a crime for any person to sell intoxicating liquors in this state, and that all places where such liquors are sold, bartered, or given away in violation of law, or where persons are permitted to resort for the purpose of drinking intoxicating liquors as a beverage, or where intoxicating liquors are kept for sale, barter, or delivery in violation of law, are common nuisances. The constitution and laws of the state make no distinction between the importer who sells in the original package, and one who sells in broken packages, or by the glass. The same penalty is on both. But the effect of the state constitution and these laws, the defendants allege, does not apply to them, because they are specially exempted from their force and effect by the decision of the supreme court of the United States in the case of Leisy v. Hardin, 10 Sup. Ct. Rep. 681, commonly known as the "Original Package Case." With the allegations of defendants the prosecution takes issue. In the decision above referred to the court says: "That ardent spirits, distilled liquors, ale and beer are subjects of exchange, barter, and traffic, like any other commodity in which a right of traffic exists, and are so recognized

by the usages of the commercial world, the laws of congress, and the decisions of courts, is not denied. Being such articles of commerce, can a state, in the absence of legislation on the part of congress, prohibit their importation from abroad, or from a sister state? or when imported prohibit their sale by the importer?" These questions having been answered in the negative by that court, the defendants invoke the benefit of that decision, and say that it is conclusive on this and all other courts of the country. For the purposes of this case we will assume this to be correct, and proceed to examine the case upon that theory. The supreme court, in the case above cited, referring to the laws of Iowa—which, in many material features are like the laws of this state, making it unlawful for an importer as well as a domestic manufacturer to sell—says: "The plaintiffs in error are citizens of Illinois, are not pharmacists, and have no permit, but import into Iowa beer which they sell in original packages as described. Under our decision in Bowman v. Railway Co., 125 U. S. 507, 8 Sup. Ct. Rep. 689, 1062, they had a right to import this beer into the state; and, in the view which we have expressed, they had the right to sell it, by which act alone it would become mingled in the common mass of property within the state. Up to that point of time we hold that, in the absence of congressional permission to do so, the state had no power to interfere by seizing, or any other action in prohibition of importation and sale by the foreign or non-resident importer. The legislation in question is, to the extent indicated, repugnant to the third clause of Section 8, Art, 1, of the constitution of the United States." Under this decision the defendants claim that it is no offense to sell intoxicating liquor or beer in the original packages, as agents for the non-resident importers and owners, under the constitution of the United States, and that a non-resident manufacturer or merchant has a right to import beer and liquors into a state, and to sell them as thus packed, in said state, any law or regulation of the state to the contrary notwithstanding. So far as the doctrine enunciated in that opinion is concerned, it is not new. The supreme court of the State of Missouri, in 1858, in the case of State v.

Shapleigh, 27 Mo. 344, and in the case of State v. North, Id. 464, applied this doctrine in all its force to the importation of hardware and boots and shoes from Boston to Missouri, which the state law by unfriendly legislation sought to exclude, as shown by the opinion, and also by the opinion of Chief Justice MARSHALL, in the supreme court of the United States, in the case of Brown v. State, reported in 12 Wheat. 419, about sixty years ago.

The defendants, however, to avail themselves of the immunity of these decisions, and the doctrine and rules declared, must show (1) that they are foreign importers, or the agents of a foreign importer, of beer or liquors; (2) that as such agents they received an importation of beer or liquors from another state or foreign country; (3) that they are, as such importers or agents, selling this importation by the original, unbroken package in which it was imported; (4) that they are not making their house of business a tippling concern for the rendezvous of persons, bringing it within the police power of the state to declare it a nuisance. All these facts must be fully established by the defendants, in order to make the transaction legitimate under the decision which the defendants attempt to shield themselves with. The failure to establish any one of these propositions makes the defendants amenable to the state law. Have the defendants in the case at bar made such a showing, by the testimony, as entitles them to this immunity? As to the importer's agency, and appointment of an agent: The whisky, which defendants admit they sold, was procured of one J. F. Hickey, of Bruce, Minn., who claimed to be a wholesaler of liquors at that place. It was ordered by the defendant Chapman, who states that the business at the Handschingle building was his. He states in his testimony that he buys it of J. F. Hickey because he can get it cheaper of him than he can of any other firm, and that he pays 35 cents, 50 cents, and 75 cents a pint for whisky, and he sells according to his own judgment, Hickey paying no expenses for running the business. He further states that he was agent for the sale of this whisky in no other way. Hickey, the wholesaler, says:

"Chapman has been acting here for me in the capacity of agent;" yet this wholsale merchant cannot tell whether he appointed him an agent verbally or in writing.   He states he sent him goods at a stipulated price, and there was nothing definite in regard to the selling price.   The seller could use his own judgment as to what he could get for it when sold.   No understanding as to who should stand losses, if any occurred; no agreement in references to paying the expenses of running the business.   Rather a singular business transaction for a wholesale merchant and importer to make with a commercial broker or agent, in a foreign state, to sell goods for him.   As to the business with the Anheuser-Busch Brewing Company, according to the testimony of defendant Chapman, and he is the only witness testifying on the point, it paid the rent of the building in which the selling was done, for the company, and that it stood its share of the running expenses of the business, and that he, the seller, was to get one third of the receipts as his profits, and that the northwestern agent of the company fixed the selling price, and that every expense was charged up to that company.   There is nothing disclosed as to the agency with the LaCrosse brewing firm, except his assertion that he was the agent for that company.   So far as the transactions with the brewing companies are concerned, there may have been enough facts shown, taking Chapman's testimony as true, to have raised the presumption that the relation of principal and agent did exist; but as between the defendant and Hickey this could not have been.   The defendant, by his own testimony, bought the liquors at a stated price, paid for the goods at that price, and sold them at any price his judgment dictated.   It is true, Hickey says that defendant Chapman was his agent, but Chapman says he was the agent of Hickey in the way and manner above stated.   These facts disclose no elements of an agency, or that the relation of principal and agent existed between them.   Were the liquors or beer received as importations from another state, or foreign country?   The whisky was possibly shipped from Bruce, Minn., but as to the beer, the testimony of Chapman shows that he does not know whether it

came from St. Louis, Mo., or not. He says: "I cannot say that the goods were shipped to me from Sioux Falls. This Anheuser beer may have come from Sioux Falls? I never looked it up to see where these goods were sent from to me. I don't know that the goods that were sold down there in the Hand-shingle building were goods that were shipped from St. Louis."

Chapman's evidence is all there was upon this point. and from it it is evident that the fact of the beer coming from another state into his hands was not established. Were the defendants selling these goods in the original, unbroken package, as imported? Defendant Chapman testifies that he got his whisky from J. F Hickey, Bruce, Minn. It came shipped to him in open boxes, each particular bottle in a package by itself. There was no cover over the wooden boxes, only a little board with his name on it. The packages were in the box; the box was not inclosed. He got the beer from the Anheuser-Busch Brewing Company. It came shipped to him in open cases, and some sealed cases. When it came in sealed cases he sold the case without opening it. When it came in loose bottles they were in an open box; from twenty-four to thirty-six bottles in a box. He sold them, each bottle by itself. He never drew the corks of the bottles. He placed the packages, some on shelves, and some in water. The large box these packages were shipped in was just a common, usual box. When a box came filled with packages he · sold each bottle by itself. He took these various small packages out of the box, and sold them separately. He did not sell the whole box, but when parties came and asked him for an original package of whisky he would sell them one of these original packages of whisky, that is, one of these packages wrapped in brown paper. As high as thirty or forty bottles came in one box, each bottle in a little piece of shaving, for the protection of the glass. Sometimes there was no shaving on them at all; they would all be lying in a big box; when he sold them he would take them out and put them in a tub of water, with ice, when his customers would ask him. He paid the freight on these boxes as cases.

They came, twenty-eight and thirty, and twenty and thirty-six, bottles in a case. Hickey, the wholesaler and shipper, says: "These packages I called 'original packages,' in the box, were packages put up by ourselves; when they were shipped they were put in pasteboard, and wrapped in paper, and so many of them put in larger boxes; there were no seals or nothing on these wrappers, and the wrappers were only for a matter of safety in shipping.   *   *   *   It was in this manner we packed the bottles in a big box, and shipped them as one consignment." An analysis of the above evidence clearly shows that the bottles of beer and whisky which were received in the open boxes were not sold in the original condition in which they were received. In the cases of Brown v. State, 12 Wheat. 419, State v. Shapleigh, 27 Mo. 344, and State v. North, Id. 464, the courts hold that "if the importer breaks up the original packages for sale or for use, or changes the form in which they were imported, or they pass into second hands, the goods will lose their distinctive character as imports, and become subject to the taxing power of the state; and in such cases nothing that has been said will protect an article so acted upon by the importer." In the case of Leisy v. Hardin, 10 Sup. Ct. Rep. 681, upon which the defendants mainly rely for immunity from the state law, the plaintiffs were citizens of Illinois, and doing business as brewers, in Peoria of that state. They shipped 122 quarter barrels, 171 one-eighth barrels, of beer, and eleven sealed cases containing twenty-nine quart bottles of beer to John Leisy, the agent of plaintiff at Keokuk, Iowa. The said John Leisy, as agent, received the shipment in the exact form in which it was shipped. He then sold the same in the original keg or sealed case as manufactured and put up by said Leisy & Co., and imported by them into the State of Iowa; no kegs or cases sold or offered for sale were broken or opened or changed in any particular until sold, and and as soon as purchased were removed from the premises. Such being the facts, they came clearly within the general principle laid down in the above case, as the shipment did not lose its distinctive

character of imports, and the importer was protected under the interstate commerce clause of the constitution of the United States. No so in the case at bar. The testimony shows that liquors and beer were sold by changing the form and condition of the package from that in which it was shipped and received. Bottles were packed in boxes; these bottles were taken from the boxes and displayed and sold separately, without any reference to the package in which they were shipped by the alleged importer, or received by the alleged agent. The importer, having determined the size and form of the packages he puts up for export, determines the size and form in which they must be sold. See *In re* Beine, 42 Fed. Rep. 546; *In re* Harmon 43 Fed. Rep. 372. The instruction was properly given by the court, and the instruction refused was properly refused.

It is not necessary to consider the fourth requisite in order for the seller of intoxicating liquors to place himself beyond the reach of the state law governing such sales, because, in the case at bar, the defendants have failed to establish (1) their agency of a foreign importer; (2) an importation; (3) that the sale was made in the original packages as received, and as originally packed. The sale of intoxicating liquors having been admitted as charged, the defendants are amenable to the state law. No error appearing, the judgment of the court below is affirmed; all the judges concurring.