STATE of South Dakota, Plaintiff
and Respondent,

v.

Michael David PICKERING,
Defendant and Appellant.

No. 11650.

Supreme Court of South Dakota.

Sept. 22, 1976.

William J. Janklow, Atty. Gen., Peter H. Lieberman, Asst. Atty. Gen., Pierre, for plaintiff and respondent.

William D. Kenyon, Sioux Falls, for defendant and appellant.

COLER, Justice.

Appellant was convicted in the circuit court of Lincoln County, venue having been transferred from Minnehaha County, of third degree burglary in breaking or entering an automobile owned by one William F. Thesenvitz, with intent to commit larceny or other felony therein, contrary to the provisions of SDCL 22–32–9. He was sentenced to a term of four to eight years in the state penitentiary and he appeals from that judgment and sentence. We affirm.

Appellant contends that he was denied a fair trial within the meaning of the constitution and, to support that basic contention, alleges that the trial court erred in denying (1) the application for a mental examination of appellant prior to trial; (2) a motion for postponement or continuance of the trial; (3) a motion to voir dire the jury panel separately; and (4) a motion for a mistrial based upon a juror's disclosure during trial of acquaintance with one of the witnesses endorsed upon the information.

Because of the nature of the claims presented, we find it necessary to briefly recite the factual situation which gave rise to appellant's apprehension and arrest. The motor vehicle of Mr. Thesenvitz, which appellant is alleged to have burglarized, was a 1974 Ford pickup that the owner had, on the evening before the alleged incident, locked and parked within a few feet of his mobile home situated north of the Sioux Falls city limits. Another resident of a mobile home within that park, a mother who was awake because of the illness of her two year old son, heard a car in the vicinity and had occasion to look out the window and saw someone tampering with the door of the pickup. That neighbor telephoned the Thesenvitz residence and Mr. Thesenvitz got up, got his trousers on, and, taking in hand a .22 caliber pistol which his wife handed him, went out a side door. Rounding the corner of the mobile home and seeing a running figure carrying, and then dropping, what was later identified as a C.B. antenna which had been taken from the pickup, Mr. Thesenvitz shouted for the individual to stop on the threat of being shot. Appellant stopped, and, conforming to a command, laid spread-eagled on the ground. Coincidentally, another neighbor was awakened by his growling dog and he, while looking out the window, also saw someone at the door of the pickup. He also proceeded to dress and grab his .22 pistol and got outside only after Mr. Thesenvitz had appellant on the ground.

Although there was no artificial illumination in the park, Mrs. Thesenvitz testified that in the bright moonlight she could see a man, whom she later identified as appellant, rummaging around behind the pickup seat which had been pushed forward. She called the police who arrived within minutes after he was apprehended and placed appellant under arrest.

Understandably, appellant wished to explain his presence in other than a criminal

light and, during the course of appellant's preliminary hearing, it was adduced that while appellant was lying face down on the ground he kept asking both Mr. Thesenvitz and the neighbor, who was also holding a gun upon him, to look at a certain knife. Appellant was quoted as making a statement to the effect that "he had seen somebody up north of town by the Interstate, cutting up cattle, and he was down there looking for a stick to hit him with." It is this statement that appears to be the basis upon which trial counsel felt that a psychiatric examination was necessary.[1] The affidavit and application for mental examination of appellant was prepared by appellant's counsel and merely recited that counsel had been informed by persons other than appellant that appellant had been a drug user and that on occasions his conduct had been bizarre. The affidavit further stated that at the time of arrest and immediately prior thereto, appellant had made a number of statements indicating he may have been mentally ill, not in touch with reality and lacked the necessary criminal intent necessary for the commission of the crime charged. He further indicated that appellant appeared despondent and unresponsive to his questions and that to prepare a proper defense it was necessary to determine the state of mind of appellant at the time of the alleged incident.

The trial court denied the application for appointment of an expert stating in the record that "there is no claim made in the affidavit or application that the defendant is not competent to stand trial" and that there was nothing in either the affidavit, which did not identify counsel's informants, or from the transcript of the preliminary hearing which "caused doubt to arise" in the mind of the court and that, therefore, appellant was not entitled to the assistance of an expert. Appellant claims that by denying the application for the appointment of an expert, he was foreclosed from asserting a mental illness defense under the provisions of SDCL 23–38–1.[2] The appropriate defense in this case, if any might have been available is governed by the provisions of SDCL 22–5–5 reading as follows:

> "22–5–5. No act committed by a person while in a state of voluntary intoxication shall be deemed less criminal by reason of his having been in such condition. But whenever the actual existence of any particular purpose, motive, or intent is a necessary element to constitute any particular species or degree of crime, the jury may take into consideration the fact that the accused was intoxicated at the time in determining the purpose, motive, or intent with which he committed the act."

S.L.1976, Ch. 158, § 38–1, effective April 1, 1977.

Other statutes to which that defense may be as well related are subdivision (4) of SDCL 22–3–1 which in this context reads:

> "22–3–1. All persons are capable of committing crimes except those belonging to the following classes:
>
> \*    \*    \*    \*    \*    \*
>
> (4) Lunatics, mentally ill persons, and all persons of unsound mind, including persons temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness." Amended, S.L.1976, Ch. 158, § 3–1, effective April 1, 1977.

and SDCL 22–5–6 which reads:

> "22–5–6. An act done by a person in a state of mental illness cannot be punished as a public offense." Repealed, S.L.1976, Ch. 158, § 5–2, effective April 1, 1977.

---

1. Appellant, testifying at the trial, on the other hand gave his version of the events that preceded the untimely interruption of his attempt to apprehend a cattle mutilator. He testified that as he was walking through that trailer court on the way to a friend's house he observed someone standing at the side of the pickup. After speaking to the stranger he was threatened with a knife and was told to "either get out of there or he was going to cut me up like those cattle." Appellant then kicked the knife from the hand of the knife wielder and when the latter had started to run away he was in pursuit and had just picked up the antenna from the ground with the intention of using it as a weapon when he was stopped by Mr. Thesenvitz.

2. The text of SDCL 23–38–1 reads as follows:
   "23–38–1. A person cannot be tried, adjudged to punishment, or punished for a public offense while he is mentally ill." Repealed,

The affidavit alleged some possibility of appellant having been under the influence of drugs. While legislation in some states specifically makes reference to controlled substances or drugs as well as alcoholic beverages,[3] SDCL 22–5–5 speaks only to the availability of the defense of voluntary intoxication. Intoxication not being defined within SDCL 22 nor within SDCL 2–14–2 we apply the rule of statutory construction set forth in SDCL 2–14–1 that "Words used are to be understood in their ordinary sense" and hold that "intoxication" for the purpose of SDCL 22–5–5 means "poisoning or the abnormal state induced by a chemical agent." Websters Third New Int. Dict. We find support for this conclusion in a recent decision of the Minnesota Supreme Court, *City of Minneapolis v. Altimus,* 1976, 238 N.W.2d 851, which gives like construction to Minnesota Statute 609.075, a statute similar to our own. See also *State v. Hall,* 1974, Iowa, 214 N.W.2d 205, 207, citing *Commonwealth v. Campbell,* 1971, 445 Pa. 488, 495, 284 A.2d 798, 801, wherein it was stated " 'there should be no legal distinction between the voluntary use of drugs and the voluntary use of alcohol in determining criminal responsibility.' " Further, the recent legislative enactment of Chapter 158 of the Session Laws of 1976, to become effective April 1, 1977, adds certain definitions to the criminal code which are pertinent to the meaning of SDCL 22–5–5 and to the defense of mental illness. Three of these definitions, set forth in Section 1–1 of that act, are as follows:

"(14) 'Intoxication,' a disturbance of mental or physical capacities resulting from the introduction of substances into the body. Intoxication is not, in itself, a mental disease or defect;

(16) 'Mentally ill,' the condition of a person who, at the time of criminal conduct, as a result of mental disease or defect, lacked substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirements of law;

(36) 'Voluntary intoxication,' intoxication caused by substances that an actor knowingly introduces into his body, the tendency of which is to cause intoxication."

Although the application contained no statutory references, the trial court quite properly treated the request under the provisions of SDCL 19–6–1 and referred to *Utsler v. State,* 1969, 84 S.D. 360, 171 N.W.2d 739 and *Utsler v. Erickson,* D.C., 1970, 315 F.Supp. 480, affirmed in 8 Cir., 440 F.2d 140, cert. denied in 404 U.S. 956, 92 S.Ct. 319, 30 L.Ed.2d 272. This court, in *Utsler v. State,* supra, quoted with approval from *State v. Geelan,* 1963, 80 S.D. 135, 120 N.W.2d 533, the following language with reference to the import of SDCL 19–6–1 as follows:

" 'This provision does not create an absolute right to the appointment of an expert witness. It merely permits the appointment of such witness in a proper

3. Both Wisconsin and Michigan have by different language as to involuntary and voluntary intoxications enacted the following:
Wisconsin Statutes Annotated
"*939.42 Intoxication*
An intoxicated or a drugged condition of the actor is a defense only if such condition:
(1) Is involuntarily produced and renders the actor incapable of distinguishing between right and wrong in regard to the alleged criminal act at the time the act is committed; or
(2) Negatives the existence of a state of mind essential to the crime."
Michigan Statutes Annotated
"§ 28.1044(1) *Legal insanity.*] Sec. 21a. (1) A person is legally insane if, as a result of mental illness as defined in section 400a of

Act No. 258 of the Public Acts of 1974, being section 330.1400a of the Michigan Compiled Laws, or as a result of mental retardardation is defined in section 500(g) of Act No. 258 of the Public Acts of 1974, being section 330.-1500 of the Michigan Compiled Laws, that person lacks substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.
*Alcohol or controlled substances.*] (2) A person who is under the influence of voluntarily consumed or injected alcohol or controlled substances at the time of his alleged offense shall not thereby be deemed to have been legally insane."

case. Whether the appointment is made is committed to the discretion of the court.' "

We are satisfied from our own examination of the record that the trial court did not abuse its discretion in denying the request.

█ Appellant's second contention is that the court abused its discretion in denying, on the day set for trial, his motion for a continuance. SDCL 23–42–5 does provide in part that "the court may, upon sufficient cause shown by either party, direct the trial to be postponed to another day in the same or next term." This court has long held that the granting or refusing of a motion for a continuance is ordinarily within the sound judicial discretion of the trial court, and its ruling thereon will not be reversed by the Supreme Court on appeal, unless there has been a manifest abuse of such discretion. *State v. Brandell*, 1910, 26 S.D. 642, 129 N.W. 242; *State v. Johnson*, 1955, 76 S.D. 37, 71 N.W.2d 733. Trial counsel was appointed by the court on November 12, 1974, and the trial commenced on November 21, 1974, and was concluded on the afternoon of November 22, 1974. Neither the facts nor the issues at law to be presented to the jury were complex and, other than the affidavit and application for the appointment of an expert witness, there was substantially nothing before the court that would present "sufficient cause" for postponement of trial. Under the circumstances of this case, the trial court did not abuse its discretion in the denial of the postponement.

█ Prior to the selection of a jury, counsel for appellant moved the court "to allow counsel to voir dire the jury panel separately, one at a time, and not in the presence of other members of the jury." This motion was denied and on appeal appellant claims that the trial court should have granted that motion in keeping with the ABA Standards Relating to Fair Trial and Free Press § 3.4(a) reading as follows:

"(a) Method of examination.

Whenever there is believed to be a significant possibility that individual talesmen will be ineligible to serve because of exposure to potentially prejudicial material, the examination of each juror with respect to his exposure shall take place outside the presence of other chosen and prospective jurors. An accurate record of this examination shall be kept, by court reporter or tape recording whenever possible. The questioning shall be conducted for the purpose of determining what the prospective juror has read and heard about the case and how his exposure has affected his attitude towards the trial, not to convince him that he would be derelict in his duty if he could not cast aside any preconceptions he might have."

While this court is aware that such a procedure has been followed when there is "significant possibility that individual talesmen will be ineligible to serve because of exposure to potentially prejudicial material," the transcript does not contain the record of the voir dire examination of the panel and no separate showing was made by appellant which would indicate any significant amount of publicity as it related to appellant or the crime charged in Minnehaha County when tried in the adjoining county of Lincoln by reason of the change of venue. We find no abuse on the part of the trial court in denying that motion for separate examination of each juror.

█ Appellant's final claim is that the court erred in failing to grant a motion for mistrial when, after the state had rested its case, one of the jurors approached the trial judge and advised him that contrary to his statement during voir dire that he knew none of the witnesses, he discovered later that a patrolman, Pete Peterson, whose name was endorsed on the information, was someone that he casually knew. In chambers, that juror was examined both by the court, appellant's counsel and by appellant himself. The trial court found the juror's failure to respond to the question on voir dire to be unintentional and not deceptive or involving bad faith and that the relationship between the patrolman and the juror would not interfere or sway the juror's

judgment. The record reveals that though his name may have been endorsed upon the information, Patrolman Peterson was not called as a witness. In this instance, there was no claim of an implied bias within the meaning of SDCL 23-43-2 and as stated by this court in *State v. Chapman,* 1890, 1 S.D. 414, 47 N.W. 411, 10 L.R.A. 432, "the decision of the trial judge on the question of indifference of a juror, or for actual bias, is not reviewable, except in the absence of any evidence to support it, in which case it is an error of law to which an exception lies" and, further, that "The question thus presented is one of mixed law and fact, and to be tried, as far as the facts are concerned, like any other issue of that character; and the finding of the trial court upon that issue ought not to be set aside by a reviewing court, unless it is made to clearly appear from the evidence that a contrary finding should have been made. The case must be one in which it is manifest that the law left nothing to the 'conscience or discretion' of the court." We find, as the court found in *State v. Chapman, supra,* that such is not evident in this case.

We have considered appellant's other assignments of error and find them to be without merit.

The judgment and sentence are affirmed.

DUNN, C. J., and WINANS and WOLLMAN, JJ., concur.

ZASTROW, J., not having been a member of the court at the time this case was orally argued, did not participate.