STATE of South Dakota, Plaintiff
and Appellee,

v.

Todd M. VOLK, Defendant
and Appellant.

No. 13791.

Supreme Court of South Dakota.

Argued Jan. 18, 1983.

Decided March 9, 1983.

Mikal Hanson, Asst. Atty. Gen., Mark V. Meierhenry, Atty. Gen., Pierre, on brief, for plaintiff and appellee.

Randolph J. Seiler of Krause & Seiler, Mobridge, for defendant and appellant.

HENDERSON, Justice.

## ACTION

A Walworth County jury convicted appellant of both arson and burglary in the third degree. Appellant was sentenced to terms of five to ten years on each conviction to

run concurrently. Due to prejudicial errors in the jury proceedings, we reverse and remand for a new trial.

## FACTS

On October 16, 1981, at 5:18 a.m., a fire was discovered in the teachers' smoking lounge of the high school in Mobridge, South Dakota. Subsequently, authorities found an open window on the school building. Fingerprints and a partial shoe print were taken from the window ledge. An investigation ensued, culminating in the arrest of appellant, a 19-year-old male, on October 19, 1981. A search warrant for appellant's premises yielded a pair of sweat pants, a down jacket, and a Mobridge cheerleading skirt. There were no eyewitnesses to an arson or a burglary.

Authorities also confiscated appellant's tennis shoes and forwarded the above materials (except the skirt) along with debris from the fire to the State Crime Lab in Pierre for analysis. Results from the State Crime Lab as testified to at trial, by defense witnesses, were inconclusive: a) hydrocarbon accelerants were not detected on any of the articles; b) lime, the type of soil around the school, was not found on the bottom of appellant's shoes; c) it was impossible to exclude shoes other than appellant's from the window sill impression; and d) there were insufficient points of identification on the fingerprints to make a positive identification or elimination of appellant. Mobridge authorities disputed the State Crime Lab findings. Both the Mobridge Fire Chief and the State Fire Marshall noted that disjunctive fires had started in four separate places. The furniture and the walls in the teachers' lounge contained what is known as "burn patterns" normally associated with a flammable liquid or an accelerant placed upon an object and then ignited. Although no one could conclusively say the fire was arson, both fire officials testified that the burn patterns indicated arson. The State Fire Marshall, in the course of his investigation, found nothing to lead him to believe that the fires were ignited by natural causes. A fact question on arson, based on circumstantial evidence, was posed for the jury.

As to the cheerleading skirt, testimony established that two skirts were missing from the school prior to the fire. Appellant's grandmother testified that he had the skirt for a year. On the third day of trial, one of the jurors disclosed in chambers that she knew the whereabouts of one of the missing skirts as her daughter had been a Mobridge cheerleader and the skirt was ruined while she had it. Appellant's counsel forthwith moved for mistrial which was denied after the juror told the trial court that such knowledge would not affect her judgment and she would not divulge the information to other jurors.

Testimony was elicited from Jeff Torevell, also a suspect in the school fire. Torevell testified that a couple of days after the fire he had been drinking heavily and was driving his automobile when he was pulled over by Officer Biel of the Mobridge Police Department. Officer Biel told Torevell that if he did not talk with him about the school fire he would be thrown in jail. Consequently, Torevell told the officer that during the evening of October 15, 1981, appellant proposed that the two start a bonfire on top of the school. Torevell testified that he advised against starting the fire and nothing more was mentioned about a fire. Appellant attempted to cross-examine Torevell using Torevell's juvenile record. The trial court denied appellant's motion to use the juvenile record as a means to impeach Torevell. Steadfastly, the trial court ruled: "I am going to preclude the defense from going into this witness' juvenile record . . . ." Although appellant raises ten issues in his brief, we treat three issues, deeming each to be meritorious grounds for reversal.

## ISSUES

### I.

DID A JUROR'S REVELATION AT THE OUTSET OF THE THIRD DAY OF TRIAL OF PERSONAL KNOWLEDGE OF A FACT IN ISSUE VIOLATE

APPELLANT'S RIGHT TO AN IMPARTIAL JURY?

## II.

DID THE TRIAL COURT ERR IN FAILING TO GRANT APPELLANT'S MOTION FOR AN EVIDENTIARY HEARING TO DETERMINE THE VOLUNTARINESS OF APPELLANT'S STATEMENTS MADE TO LAW ENFORCEMENT OFFICERS?

## III.

DID THE TRIAL COURT ERR IN FAILING TO ALLOW CROSS–EXAMINATION OF A KEY PROSECUTION WITNESS CONCERNING MATTERS IN THE WITNESS' JUVENILE RECORD?

## DECISION

### I.

During the third day of trial, one of the jurors revealed to the trial court that she had independent knowledge of a fact in issue before the jury. Although appellant's counsel motioned for a mistrial, it was denied. This independent knowledge of the juror established the whereabouts of one of two missing Mobridge cheerleading skirts prior to the fire, namely that her daughter had been issued a cheerleading skirt and it was not returned to the school.

■ Jurors in our system of jurisprudence must take an oath before they serve. This oath requires that a juror as the finder of fact base his decision solely upon the evidence introduced at trial. By the terms of our South Dakota Constitution Art. VI, § 7, appellant was entitled to a trial by an impartial jury. An accused's right to an impartial jury requires that the minds of jurors be without bias or prejudice. *State v. Belt,* 79 S.D. 324, 111 N.W.2d 588 (1961).

■ Trial courts are allowed broad discretion in decisions regarding the bias of jurors. We will not reverse the trial court's decision unless it clearly appears from the evidence that a contrary decision should

have been made. *State v. Pickering,* 245 N.W.2d 634 (S.D.1976).

■ This is a situation where a contrary decision should have been made. The cheerleading skirt found in appellant's residence was the most powerful tangible evidence the prosecution had to link appellant to the school fire. Testimony established that two skirts had been missing for some time prior to the fire. One juror possessed knowledge of the whereabouts of one skirt. Her knowledge reduced by fifty percent the probability of appellant having a skirt which was missing before the fire. To expect this juror to totally ignore such knowledge, was asking the impossible. No matter how sincere or in good faith the juror deliberated to reach her decision on a verdict, imbedded in her mind was a crucial fact derived outside the arena of justice. This taint infected the proceedings. Thus, we reverse and remand on this basis thereby permitting appellant to have a new trial with impartial jurors.

### II.

In compliance with SDCL 23A–8–3, appellant filed motions in limine to exclude specific evidence or testimony and to suppress appellant's statement, or in the alternative, for an evidentiary hearing on the voluntariness of a statement made by appellant during the booking process. The trial court summarily denied appellant's motions after reading a portion of the preliminary hearing transcript and concluding appellant's statement was voluntary. An evidentiary hearing on appellant's motion to suppress was never held. Findings of fact and conclusions of law were not entered or made on the record.

■ When an incriminating statement allegedly made by the accused is offered by the State and objected to, the State has the burden of proving beyond a reasonable doubt that the statement was given knowingly, intelligently, and voluntarily. *State v. Lyons,* 269 N.W.2d 124 (S.D.1978). Our standard of review on voluntariness hearings is to uphold the trial court unless its

ruling is clearly erroneous. *State v. Hintz,* 318 N.W.2d 915 (S.D.1982); *State v. Lewis,* 90 S.D. 615, 244 N.W.2d 307 (1976); *State v. Aschmeller,* 87 S.D. 367, 209 N.W.2d 369 (1973). Trial courts should enter findings of fact and conclusions of law on voluntariness hearings. *State v. Janis,* 321 N.W.2d 527 (S.D.1982) (Henderson, J., specially concurring).

■ We hold that the trial court's ruling was clearly erroneous as a mere reading of a portion of the preliminary hearing was an insufficient development of the facts to prove beyond a reasonable doubt that appellant's statements were freely and voluntarily made. Additionally, we once again urge trial courts to enter findings of fact and conclusions of law upon voluntariness hearings. Therefore, we reverse and remand this issue for an evidentiary hearing on the voluntariness of appellant's statement with findings of fact and conclusions of law to be entered thereon.

### III.

■ Appellant was allowed to interview Jeff Torevell, a key prosecution witness, over the lunch hour on the second day of trial. In light of Torevell's juvenile record and inconsistent statements made at the interview, substantial questions were raised as to how to effectively cross-examine Torevell. Despite the obvious time constraints of this late discovery (caused by the prosecution's failure to abide by the trial court's discovery order), appellant was able to motion the trial court for cross-examination of Torevell based on his juvenile record. The trial court refused to allow any query into Torevell's juvenile record. Appellant's motion for new trial addressed this issue and was also denied.

Cross-examination of a witness' juvenile record is governed by the United States Supreme Court decision of *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). In *Davis,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347, a key prosecution witness was on probation as a juvenile offender. Defense counsel sought to cross-examine the witness on his juvenile record to

show bias or prejudice. The trial court barred defense counsel's effort, and the Court in *Davis,* 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed.2d at 355, responded:

> Petitioner was thus denied the right of effective cross-examination which " 'would be constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it.' *Brookhart v. Janis,* 384 U.S. 1, 3 [86 S.Ct. 1245, 1246, 16 L.Ed.2d 314 (1966) ]." *Smith v. Illinois,* 390 U.S. 129, 131, 88 S.Ct. 748, 749, 19 L.Ed.2d 956 (1968).

As to the effect on the witness of disclosing his juvenile record, the Court further held:

> Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record—if the prosecution insisted on using him to make its case—is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness.

*Davis,* 415 U.S. at 319, 94 S.Ct. at 1112, 39 L.Ed.2d at 355. The *Davis* Court concluded:

> The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. The State could have protected Green from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records.

*Davis,* 415 U.S. at 320, 94 S.Ct. at 1112, 39 L.Ed.2d at 356.

Therefore, we must reverse the trial court's ruling on its refusal to permit cross-examination of Torevell's juvenile record and remand this issue with instructions that if Torevell testifies for the prosecution in appellant's new trial, that appellant be allowed to cross-examine Mr. Torevell for

bias or prejudice based on his juvenile record consistent with the requirement of *Davis*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347.

We note that the State was permitted to introduce evidence of an experiment performed by the State Fire Marshall on the courthouse steps during a recess in the trial. Objection was timely made upon the grounds that the test was irrelevant, prejudicial, and inexact. We agree. There was not a sufficient foundation in the record to establish a nexus between the fluid tested on the courthouse steps and the fluid in the Mobridge High School. We hold that the court abused its discretion in permitting this evidence to go before the jury. *State v. Johnson*, 316 N.W.2d 652 (S.D.1982); *State v. Houghton*, 272 N.W.2d 788 (S.D. 1978).

Reversed and remanded for new trial in accordance herewith.

All the Justices concur.