469 So.2d 1014 (1985)
STATE of Louisiana
v.
Kenny YOUNG.
No. KA 84/1393.
Court of Appeal of Louisiana, First Circuit.
April 16, 1985.
*1016 Eric Pittman, Livingston, La., for the State.
Thomas Waterman, Livingston, La., for defendant.
Before GROVER L. COVINGTON, C.J., and LOTTINGER and JOHN S. COVINGTON, JJ.
GROVER L. COVINGTON, Chief Judge.
Defendant, Kenny Young, was indicted for first degree murder in violation of LSA-R.S. 14:30; one count of armed robbery, in violation of LSA-R.S. 14:64; three counts of forgery, in violation of LSA-R.S. 14:72; and one count of felony theft, in violation of LSA-R.S. 14:67. Defendant pled not guilty and not guilty by reason of insanity. The jury convicted him as charged, and, after a deliberation of the penalty phase, recommended that he be sentenced to life imprisonment. The trial court sentenced him to life imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence for *1017 the conviction of first degree murder; seventy-five years at hard labor, without the benefit of probation, parole, or suspension of sentence for the conviction of armed robbery, to run consecutively to the sentence for the murder conviction; five years at hard labor for each of the counts of forgery, to run consecutively to each other and consecutively to the sentence for first degree murder; and two years at hard labor for the conviction of theft, to run consecutively to the other sentences. He has appealed, alleging five assignments of error, as follows:
1) The trial court erred in allowing the taped confession into evidence despite a showing that defendant was in a highly emotional state which diminished his understanding of his rights to an attorney and to be free from self incrimination.
2) The trial court erred in allowing the taped confession into evidence despite a showing that the defendant had sought to speak to an attorney.
3) The trial court erred in refusing to grant defendant's request for a continuance based on the grounds that several key witnesses did not appear.
4) The trial court erred in not calling a new jury venire or granting a mistrial even though the jury was tainted by prejudicial comments and newspaper reporting.
5) There was no evidence presented that defendant had the specific intent to kill or inflict great bodily harm while engaged in the perpetration of an armed robbery.
Defendant was indicted for the murder of his great-uncle, Penny L. Kelly, an eighty-two year old man with whom defendant resided from time to time. In related charges, defendant was charged with the theft of the gun with which he shot his victim; three counts of forgery in connection with three checks totaling $1180.00 which defendant stole from his victim and cashed after forging the victim's signature; and one count of armed robbery, which arose from defendant's having stolen $20.00 from the victim after he had been shot.
On the morning after the shooting, the wife of the victim's grandson arrived at the victim's house and found him face down in a pool of blood. She notified other relatives and friends, assuming that he had died of natural causes; the relatives of the victim contacted a funeral home and the body was removed from the house. While he was being prepared for burial, the mortician discovered the bullet wounds and notified the coroner.
Defendant, as well as other family members, was questioned generally about the crime. Later that day, attention focused on him as a suspect. Defendant took police officers to his house and showed them where he had hidden the money obtained from the last of the forged checks, cashed after the murder.
The following day, defendant gave a full, taped confession in which he related that he had stolen the gun from a friend several weeks earlier. On the night of the murder, he watched television for a while with the victim, and shot him in the back when Kelly went into the kitchen. Defendant then related that, as his great-uncle lay on the floor moaning, he shot the victim again in the head, took $20.00 from his wallet, and went home for a few minutes. Defendant stated that he left his home, threw the gun into a nearby sewer, and went to a local bar. He also confessed to having stolen the three checks and cashing them.
Defendant later filed a motion to suppress this confession, alleging the general ground that the confession had been unlawfully obtained. After a hearing, his motion was denied, and the tape was played at the trial to the jury. He was convicted as charged on each of the counts.

ASSIGNMENTS OF ERROR ONE AND TWO:
In these assignments of error, defendant alleges that the trial court erred in denying his motion to suppress the confession, asserting that it should not have been allowed in evidence because of his emotional *1018 state at the time of his confession, which state diminished his understanding of his rights to an attorney and to be free from self-incrimination; and that the court erred by admitting the confession into evidence despite a showing that defendant had sought to speak to an attorney.
Before a confession can be introduced into evidence it must be affirmatively shown that it was free and voluntary, and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. LSA-R.S. 15:451; State v. Guidry, 449 So.2d 41 (La.App. 1st Cir.1984).
At the hearing on the motion to suppress, defendant testified that he had ingested crystal methamphetamine (crystal methedine) for four days prior to the murder, and he was depressed and paranoid at the time of the confession. Defendant presented other witnesses to testify to the psychological effects of such drug abuse. He now argues that he was so nervous and upset that he was unable to make a knowing waiver of his constitutional rights.
With regard to the relationship between diminished mental or intellectual capacity and involuntariness, the Supreme Court has noted that such a condition does not of itself vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. State v. Benoit, 440 So.2d 129 (La. 1983). The critical factors are whether the defendant was able to understand the rights explained to him and whether he voluntarily gave a statement. State v. Benoit.
The police officer who took defendant's confession testified that defendant appeared rational and coherent at the time. In the confession, defendant was able to describe with particularity the circumstances of the crimes and the events surrounding them. He specifically mentioned the names of the television shows that he watched with his relative before the shooting. He remembered the exact amount of money that he stole from the victim, and was later able to find the wallet when other relatives were searching for it. He was able to recall the names of the store and the bar he patronized after the murder, where he disposed of the murder weapon, and the kind of soft drink he bought within a few minutes of the murder. Further, his employer testified that she observed nothing wrong with defendant the day of the shooting or the day after. The state's evidence provided a sufficient basis for the trial court's conclusion that defendant was rational, coherent and able to comprehend the meaning and significance of his confession to the crimes, and to knowingly waive his constitutional rights. State v. Thompson, 429 So.2d 862 (La.1983). The evidence also supports the judge's conclusion that the confession was freely and voluntarily made. State v. Thompson.
Defendant also argues that his confession should have been suppressed because he was denied his right to counsel. Defendant claims that he requested, two or three times, that an attorney be summoned when he was being questioned on the evening of the shooting; and further requested an attorney one or two times on the following morning, prior to the confession.
At the hearing on the motion to suppress, defendant named three detectives, Haley, Sanders and Cowart, as having been present at the time that he requested an attorney. The officers testified at the hearing, and denied that defendant requested an attorney.
The testimony of the officers specifically rebuts defendant's allegation that he requested an attorney. Defendant stated in his confession that his constitutional rights had been read to him; that he understood those rights; and that he was making the statement of his own free will. The evidence supports the judge's ruling that the confession was admissible. Defendant's motion to suppress the confession was properly denied.

ASSIGNMENT OF ERROR NO. THREE
In this assignment of error, defendant argues that the trial court erred in denying his motion for a continuance based on the *1019 ground that several of his witnesses had not appeared at trial.
Initially, we note that the proper procedural vehicle by which defendant should have urged his motion is by a motion for a recess. A continuance is the postponement of a scheduled trial or hearing, and shall not be granted after the trial or hearing has commenced; a recess is a temporary adjournment of a trial or hearing that occurs after a trial or hearing has begun. LSA-C.Cr.P. art. 708. A jury trial commences when the first prospective juror is called for examination. LSA-C.Cr.P. art. 761. Defendant first urged his motion for a continuance after one and one-half days of voir dire and after the jury had been selected. Since the trial had begun, defendant's motion for a continuance was clearly untimely.
Regardless of how the motion was styled, the court may consider the motion as though it had been properly denominated. State v. Warren, 437 So.2d 836 (La.1983). A motion for recess is evaluated by the same standards as a motion for a continuance. State v. Warren. To be entitled to a continuance or recess in order to secure the presence of a witness, a defendant must state facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at trial; facts and circumstances showing a probability that the witness will be available at the time to which trial is deferred; and facts showing due diligence used in an effort to procure attendance of the witness. LSA-C.Cr.P. art. 709; State v. Warren. The decision to grant or deny a recess is within the sound discretion of the trial judge and will not be overturned on appellate review absent a clear abuse of discretion. State v. Warren.
After defendant moved for a postponement of the trial, the court heard argument from both counsel, at which time defendant indicated to the court that no return had been made on three of his subpoenas. The trial court denied the motion.
We agree with the trial judge that defendant's actions reflect a lack of the due diligence necessary to entitle him to a recess, and he has failed to demonstrate the existence of any of the grounds which would entitle him to a continuance or recess. The trial had already been proceeding for one and one-half days. The trial court had been ordered by this Court to try defendant no later than July 2, 1984, the date on which the trial commenced. Defendant was aware of the order mandating that the trial be conducted by the date these proceedings were begun. Nevertheless, he waited until the trial was well under way before objecting. Further, defendant did not show the actual necessity of the witnesses or that the witnesses would be available at a later date. We find no abuse of discretion by the refusal of the trial court to postpone or recess defendant's trial. State v. Warren.

ASSIGNMENT OF ERROR NO. FOUR:
In this assignment of error, defendant argues that the trial court erred by failing to summon a new jury venire or grant a mistrial because the current venire had been tainted by prejudicial comments and newspaper reporting.
During the voir dire, several prospective jurors testified that they believed defendant to be guilty based on information received through media reports. After the first two of those jurors had been excused, defendant moved for a new jury venire to be empanelled because of the impact of these statements. The prosecution argues that defendant had failed to request the prospective jurors be sequestered, and that the testimony at issue was in response to defense counsel's questions. The trial court denied the motion. At the conclusion of the selection of the jury, defendant again objected to the jury venire.
The setting aside of a jury venire is properly raised by a motion to quash, not by objection. LSA-C.Cr.P. art. 532; State v. Charles, 350 So.2d 595 (La. 1977). However, we observe that if the attack upon the petit jury venire were properly *1020 made, it is without merit. State v. Francis, 285 So.2d 191 (La.1973).
The defense was entitled to challenge for cause those prospective jurors who stated that they had been influenced by this testimony, or who had formulated an opinion as to the guilt or innocence of the accused. The transcript of the voir dire indicates that the trial court carefully monitored the responses by the prospective jurors, and excused any jurors who might possibly have been influenced by statements indicating any preconceived opinions. To quash the entire venire on the basis of exposure to one source of information would seem a meaningless gesture, particularly when the voir dire process remains available. State v. Bland, 419 So.2d 1227 (La.1982). Barring a showing of actual bias or lack of impartiality, the defendant's objection to the jury venire was properly denied.
Defendant further contends the trial court erred in failing to grant a mistrial, based on the same allegations of a tainted jury. Defendant herein did not request a mistrial. He does not show that the statements by the prospective jurors made it impossible for him to obtain a fair trial or operated as a legal defect in the proceedings. LSA-C.Cr.P. art. 775. The record establishes that the jurors selected were fair and impartial. The trial court did not err by failing to grant a mistrial.

ASSIGNMENT OF ERROR NO. FIVE:
In his final assignment of error, defendant alleges that the evidence does not support a conviction of first degree murder because the prosecution failed to prove that the killing took place during the course of an armed robbery. He argues that the murder was not committed during the perpetration of an enumerated felony because the evidence presented demonstrated that the money was taken out of the victim's wallet as an afterthought. Essentially, defendant claims that the murder ended with the second shot fired into the skull of the victim, and the theft of money from the dead or dying victim constituted a separate crime.
In State v. Anthony, 427 So.2d 1155 (La.1983), the Supreme Court was faced with an analogous issue in a case wherein the defendant murdered a witness who saw him flee from an aggravated burglary. Defendant therein argued that flight from the scene of an aggravated burglary was not in the perpetration of the aggravated burglary, and thus did not constitute an aggravating circumstance within the purview of LSA-R.S. 14:30(1). The Court, noting that other jurisdictions have generally spoken in terms of the "res gestae" of the crime when determining when the underlying felony terminated for purposes of applying a felony-murder doctrine, held that the res gestae of the crime begins at the point where an indictable attempt is reached and ends where the chain of events between the attempted crime or completed felony is broken, with the question usually being a fact determination for the jury. 427 So.2d at 1158.
The evidence in the record establishes that the defendant shot the victim twice, mortally wounding him, before removing the contents of the victim's wallet. Whether the victim was already dead or dying is of no consequence in this context; the murder obviously facilitated the robbery. State v. Nelson, 459 So.2d 510 (La.1984).
The physical evidence clearly establishes that a crime was committed. Defendant's confession established that the homicide and the robbery herein formed one continuous transaction; there was no break in the chain of events between the homicide and the felony. State v. West, 408 So.2d 1302 (La.1982). Defendant's argument on this assignment is without merit.

PATENT ERROR
The indictment charging defendant with theft is fatally defective in that no valuation of the property stolen is alleged thereon. The indictment reads as follows:
The grand jury of Livingston Parish, Louisiana, presents that Kenny W. Young on or about October 15, 1982 within the jurisdiction of this Honorable *1021 Court, Did commit theft of a .32 Cal. Pistol, Serial # 64505 Melior Belgam, Belonging to John Cudd of 1412 Don Avenue, Denham Springs, La., in violation of Article R.S. 14:67 of the Louisiana Criminal Code.
The Louisiana Code of Criminal Procedure requires that the indictment be a plain, concise and definite written statement of the essential facts constituting the offense charged. La.C.Cr.P. art. 464. The indictment must contain all of the essential elements of the crime intended to be charged in sufficient particularity to enable the defendant to prepare for trial, to allow the court to determine the propriety of the evidence which is submitted upon the trial and to impose the correct punishment on a verdict of guilty. State v. Dozier, 258 La. 323, 246 So.2d 187 (1971). Value, price or the amount of damage must be alleged in the indictment if such allegation is essential to charge or determine the grade of the offense. LSA-C.Cr.P. art. 470.
The theft statute, LSA-R.S. 14:67, provides for graduated penalties in the event of conviction. See State v. O'Quinn, 342 So.2d 202 (La.1977). The penalty depends on the value of the object stolen. State in Interest of Batiste, 359 So.2d 1077 (La.App.3rd Cir.1978), aff'd 367 So.2d 784 (La.1979). The value of the thing taken is an essential element of the crime of theft. State v. Russell, 444 So.2d 271 (La.App. 1st Cir.1983). The indictment, therefore, is defective in failing to allege a monetary valuation of the pistol.
If the sufficiency of an indictment or information is not questioned at the trial, the pleading must be held to be sufficient unless it is so defective that it does not, by any reasonable construction, set forth an identifiable offense against the laws of this state and inform the defendant of the statutory basis of the offense. State v. Storms, 406 So.2d 135 (La.1981). The absence of an allegation of the value of the pistol prevents the indictment herein from identifying the grade of the offense charged and the punishment applicable thereto. The indictment is fatally defective and can not serve as the basis of a valid prosecution.
Further, the verdict rendered herein is defective in failing to establish the grade of the offense. The verdict returned by the jury reads as follows:
We THE JURY, find the defendant, Kenny W. Young:
GUILTY OF THEFT OF PROPERTY OF A VALUE OVER $100.00
Three separate grades of theft are established by the criminal code, to wit: theft of property of a value less than $100.00; theft of property valued at more than $100.00 but less than $500.00; and theft of property valued at $500.00 or more. LSA-R.S. 14:67.
There is no formal requirement as to the language of the verdict except that it must clearly convey the intention of the jury. La.C.Cr.P. art. 810; State v. Vincent, 387 So.2d 1097 (La.1980).
When faced with an ambiguous verdict, the intent of the jury can be determined by reference to the pleadings, the evidence, the admissions of the parties, the instructions, or the forms of the verdict the court submitted. See State v. Williams, 386 So.2d 1342 (La.1980).
The indictment, as noted earlier, does not allege a value of the property stolen. Although the owner of the pistol testified at trial; he was not asked for and did not state the value of the gun.
The list of responsive verdicts provided to the jury does not provide for verdicts of guilty of theft of over $100.00 but less than $500.00 or $500.00 or more. The omission of the highest grade of theft may have been caused by the fact that the court felt it obvious that the pistol was worth less than $500.00; be that as it may, no valuation was alleged or proved.
A jury verdict must clearly express the intent of the jury and must do so in terms of the statute which provides the penalty. State v. White, 315 So.2d 301 (La.1975), on rehearing. The instant verdict *1022 cannot be the basis for the sentence imposed as it fails to inform the court of the value of the property stolen, such value being determinative of the prescribed sentence. The verdict rendered herein indicates that the jury found defendant to have committed the crime of theft; that verdict does not indicate whether the theft was of property valued at more or less than $500.00 in order to identify the appropriate sentence.

CONCLUSION:
For the foregoing reasons, defendant's conviction and sentence for felony theft in violation of LSA-R.S. 14:67 is reversed and the sentence imposed thereon is vacated; in all other respects, defendant's convictions and sentences are affirmed.
AFFIRMED IN PART; REVERSED IN PART.