**STATE of South Dakota, Plaintiff and Appellee,**

**v.**

**Jason GARNETT, Defendant and Appellant.**

**No. 17677.**

Supreme Court of South Dakota.

Considered on Briefs May 29, 1992.

Decided Aug. 19, 1992.

Mark Barnett, Atty. Gen., Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

David R. Wurm of Pennington County Public Defender's Office, Rapid City, for defendant and appellant.

MILLER, Chief Justice.

Jason Garnett (Garnett) appeals his judgment of conviction for burglary. We affirm in part and reverse and remand in part.

### FACTS

Garnett, Chris Zoss and Rick Woehler broke into the Arc Thrift Store in Rapid City while trying to burglarize the First Stop Gun and Pawn Shop. Garnett and Woehler entered the pawn shop while Zoss waited on the roof as a lookout. They tripped an alarm to which law enforcement officers responded. The building was soon surrounded and Garnett gave himself up almost immediately. Woehler hid in the building. Since the pawn shop was known to contain guns, the law enforcement officers surrounded the building and waited for Woehler to surrender. He finally gave up after several hours.

Garnett was charged with two counts of third degree burglary. He moved to dismiss both counts of the information on the grounds that they did not describe a public offense. The trial court denied his motion. State later dismissed the second count from the information. The remaining count (Count I) read:

> That on or about the **25th** day of **May, 1991,** in the County of Pennington, State of South Dakota, **JASON GARNETT** did commit the public offense of **THIRD DEGREE BURGLARY** in that he did then and there feloniously did (sic) enter or remain in an unoccupied structure, to-wit: First Stop Gun, <u>with intent to commit a crime therein, theft,</u> in violation of **SDCL 22–32–8,....** (underline added)

Garnett filed a motion with the trial court to compel the prosecution to amend the language in the information to parallel that in SDCL 22–32–8. The trial court denied the motion.

During voir dire, Garnett's attorney asked the entire prospective juror panel if any of them had been a victim of crime. Several prospective jurors said they had been victims of crime. Garnett's defense attorney David Wurm asked each of those prospective jurors further questions about the nature of the crimes committed against them. He eventually questioned Mrs. Burmeister.

> Burmeister: I had a ring stolen a couple years ago which I recovered from a pawn shop and dropped the charges against the young man.
>
> Wurm: You dropped the charges?
>
> Burmeister: Yeah.
>
> Wurm: You're uncomfortable, then, about that?
>
> Burmeister: Well—.
>
> Wurm: You have some reservations?
>
> Burmeister: I guess my problem is this, there was an acquaintance of my son's and I don't remember the young man's name, but it was Jason.

The trial court immediately had a conference with the attorneys and Mrs. Burmeister outside the presence of the jury. Mr. Wurm asked Mrs. Burmeister if she meant the boy was Jason Garnett.

Burmeister: I am not sure.

Wurm: Are you saying that?

Burmeister: I guess if I knew, if he could answer to me particular friends, then, I would be sure.

Wurm: You think it is though?

Burmeister: I think it is, yes.

Mrs. Burmeister said she recognized Garnett's face. The trial judge excused Mrs. Burmeister from the prospective jury panel. Garnett moved for a mistrial. The prosecutor contended that the prospective jury panel had not been contaminated. The trial court decided to admonish the remaining prospective jurors and suggested that the defense should make a more in-depth inquiry during voir dire to uncover any prejudicial effects from Mrs. Burmeister's remarks. The trial court reconvened open court and admonished the prospective jurors to disregard Mrs. Burmeister's remarks. Voir dire was completed and the case proceeded to trial.

The jury found Garnett guilty of burglary as charged in count I of the information. The trial court sentenced Garnett to six years in the penitentiary and ordered him to pay restitution of $3,412.48. Of that amount, $1,085 was restitution for damages and lost business to the Arc Thrift Shop and First Stop Pawn. The remaining $2,326.48 was to be paid to Pennington County for overtime compensation to law enforcement officers involved in the arrest of Garnett and his companions. (The trial court's restitution total is inaccurate by one dollar). Garnett appeals and raises three issues.

## DECISION

### THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO DISMISS THE INFORMATION.

■ The decision to deny a motion to dismiss an indictment is in the discretion of the trial court and will only be reversed if there has been an abuse of discretion. *State v. Kleinsasser*, 436 N.W.2d 279, 281 (S.D.1989).

Garnett was charged under SDCL 22–32–8, which provides:

> Any person who enters an unoccupied structure, with intent to commit any crime *other than the act of shoplifting or retail theft as described in chapter 22–30A* constituting a misdemeanor, or remains in an unoccupied structure after forming the intent to commit any crime other than shoplifting as described in chapter 22–30A constituting a misdemeanor, is guilty of third degree burglary. Third degree burglary is a Class 4 felony. (emphasis added)

Garnett wanted the information dismissed because it did not contain the language excluding shoplifting and retail theft from the list of intended underlying crimes.

■ It is not necessary for an information to quote the exact language contained in a statute. SDCL 23A–6–17. All that is necessary is that the information apprises the defendant of the charge against him and enables him to plead an acquittal of the conviction to bar future prosecutions. *Kleinsasser*, 436 N.W.2d at 281; *State v. Loop*, 422 N.W.2d 420 (S.D.1988). *See also* SDCL 23A–6–7(5).

The information specified the crime and explicitly set forth the statute under which Garnett was charged. Moreover, the language in the information specifies that Garnett entered the building with the intent to commit the crime of *theft*. In other words, the prosecutor undertook the added burden to prove that Garnett entered the building with the intent to commit the crime of theft. Garnett clearly knew the offense with which he was charged. *See State v. Wilson*, 297 N.W.2d 477 (S.D. 1980); *State v. Hansen*, 407 N.W.2d 217 (S.D.1987) (failure to specify ulterior crime was not reversible error).

Where the information explicitly cited the criminal statute by number, Garnett cannot legitimately claim he is not protected from subsequent prosecution for the

same criminal acts (double jeopardy).* We affirm the trial court's denial of the motion to dismiss the information.

## THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN REFUSING TO DECLARE A MISTRIAL.

■ Garnett argues that he was denied his constitutional right to an impartial jury because of Mrs. Burmeister's remarks. *See* U.S. Const., amend VI; S.D. Const., art. VI, § 7. A trial court's decision to deny a motion for mistrial will only be reversed if the decision was an abuse of discretion. *State v. Bogenreif,* 465 N.W.2d 777 (S.D.1991); *State v. Blalack,* 434 N.W.2d 55 (S.D.1988); *State v. McDowell,* 349 N.W.2d 450 (S.D.1984). *See also State v. Younger,* 453 N.W.2d 834 (S.D.1990) (trial judge was in a superior position to evaluate the prejudicial effect of testimony).

■ There should be an actual showing of prejudice before a mistrial is granted. *State v. Clabaugh,* 346 N.W.2d 448 (S.D. 1984). Garnett has not shown that he was prejudiced by Mrs. Burmeister's remarks. Her comments heard by the other jurors were, at best, vague. Moreover, her comments did not directly relate to the charges against Garnett in this case. The trial judge excused Mrs. Burmeister and admonished the prospective jurors to disregard her comments. Perhaps most important, voir dire continued and Garnett's counsel had the opportunity to question the prospective jurors to discover any prejudice. *See State v. Young,* 469 So.2d 1014, 1019 (La.Ct.App.1985) (entire juror panel did not need to be dismissed where voir dire could not uncover any prejudice). Garnett has not argued that actual prejudice was found during the continuing voir dire. Thus, Garnett has simply not shown any actual prejudice he suffered because of Mrs. Burmeister's comments.

The trial court did not abuse its discretion by denying the motion for mistrial.

## THE TRIAL COURT'S RESTITUTION ORDER WAS PARTIALLY ERRONEOUS.

■ The trial court ordered Garnett to make restitution for damage and lost business caused to the stores he and his companions burglarized. The trial court also ordered Garnett to make restitution to Pennington County for overtime paid to officers called out to apprehend Garnett and his companions.

Garnett argues that he was not responsible for the lost business caused to the burglarized stores. He claims Woehler was responsible for the lost business because he remained hidden in the store for several hours after Garnett surrendered.

Garnett was found guilty of breaking into the stores. The loss of business was a direct result of the break-in. He waived a hearing on the amount of restitution to be paid to the businesses. *See State v. Tuttle,* 460 N.W.2d 157 (S.D.1990) (defendant is entitled to a hearing on restitution). Therefore, he did not offer the trial court any evidence to prove that the stores would have lost less business but for Woehler's delay in surrendering. Since Garnett did not dispute the amount of damage and lost business when he had the opportunity, the trial court did not err in ordering Garnett to make restitution for those amounts. That portion of the restitution order is affirmed.

■ Garnett contends that he may not be ordered to pay Pennington County for overtime for the police officers. The restitution statutes only authorize the trial court to order restitution to "victims." *State v. No Neck,* 458 N.W.2d 364 (S.D. 1990). A victim is defined as "any person, ... who has suffered pecuniary damages as a result of the defendant's criminal activities." SDCL 23A–28–2(5). As in *No Neck,* Garnett did not commit any crime

---

\* Even if it would be unclear from the information that Garnett was prosecuted under the current version of SDCL 22–32–8, if anyone attempted to prosecute him again for the same incident, Garnett would not have to rely on the information alone to present his double jeopardy argument. A defendant may allege and prove facts outside the record to prevent a subsequent prosecution in violation of rights against being placed in "double jeopardy." *See, e.g., State v. McGee,* 221 Neb. 557, 378 N.W.2d 674 (1985). *See also, State v. Wurtz,* 436 N.W.2d 839 (S.D.1989).

where Pennington County was the "victim." Thus, the trial judge had no authority to require Garnett to pay for the county's overtime expenses.

Similarly, Garnett could not be ordered to pay the overtime expenses as part of the "prosecution costs" which may be recovered from a convicted criminal. *See* SDCL 23A-27-26. Governmental costs, such as "salaries and expenses of special agents" are expressly excluded from the prosecution costs which a convicted criminal may be ordered to repay. *Id.*

Since, the trial court had no authority to order Garnett to repay the overtime expenses as either "restitution" or a "prosecution cost," that portion of the restitution order which directs Garnett to repay Pennington County $2,326.48 is reversed. We remand and direct the trial court to strike that provision from its judgment.

WUEST, SABERS and AMUNDSON, JJ., concur.

HENDERSON, J., concurs and concurs specially.

HENDERSON, Justice (concurring; specially concurring).

## ISSUE ONE

I concur. In addition to the reasons and cases cited in the majority, clearly the prosecutor had prosecutorial license to not charge (a) shoplifting or (b) retail theft. SDCL 7–16–9. Clearly, the evidence did not beget such a charge. It is the prosecutor's function and responsibility to lodge charges, not defense counsel. Trial court, also, could not have instructed under (a) or (b) above because it does not have to instruct on matters not supported by the evidence. *State v. Woods*, 374 N.W.2d 92, 96 (S.D.1985); *State v. Fender*, 358 N.W.2d 248, 252 (S.D.1984). There was no evidence to support shoplifting or retail theft. Furthermore, Instructions 8, 9 and 10 submitted to the jury set forth the essential elements of the offense and were not objected to by appellant.

## ISSUE TWO

I specially concur.
● Appellant chose to furnish this Court with a truncated record, including a partial transcript of the voir dire proceedings. If any presumption is to be drawn from an incomplete record, it is to be presumed that the trial court acted correctly. *State v. Garton*, 390 N.W.2d 61, 63 (S.D.1986).
● South Dakota's established scope of review on this juror-bias issue is found at *State v. Pickering*, 245 N.W.2d 634 (S.D.1976). *Pickering* held that this Court will not reverse the trial court's decision, unless it *clearly appears from the evidence* that a contrary decision should have been made. Said case specifically pertains to bias of jurors, as does *State v. Volk*, 331 N.W.2d 67 (S.D.1983). These holdings are more circumscribed than the 1985 Louisiana Court of Appeals case, cited in the majority opinion. The *Young* case in Louisiana held, inter alia, there was no error in denying a mistrial based on statements made by two jurors during voir dire when they were of the belief that defendant was guilty (in front of the entire panel), based on information received via media reports. *Young* essentially holds that by excusing the prospective juror who makes a biased comment, that this may erase any prejudice in the entire panel. We must keep in mind that South Dakota Constitution Art. VI § 7 mandates a trial by an impartial jury. An accused's right to an impartial jury requires that the minds of jurors be without bias or prejudice. *State v. Belt*, 79 S.D. 324, 111 N.W.2d 588 (1961). The comments made by Mrs. Burmeister were powerful statements to hurt Garnett's right to a fair trial. They referred to a pawn shop and a "Jason." This case involves a pawn shop and a "Jason." In camera, Mrs. Burmeister believed it was the same "Jason" and testified that she recognized his face. I would adopt the holding in *State v. Massey*, 119 R.I. 666, 382 A.2d 801, 804 (1978) (Supreme Court of Rhode Island) that

once a panel is "tainted" with such a remark as Mrs. Burmeister, that the burden is upon the state to establish that the remark did not deprive defendant from a fair trial. Moreover, that the state must establish the error committed was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Garnett is entitled to a trial by an "impartial jury." United States Constitution, Amendment VI. Thus, the federal constitution and a United States Supreme Court decision are vital to our deliberations here. This Court should follow the "harmless beyond a reasonable doubt" rule. Due to the truncated record, Garnett has not elevated his proof to a favorable position to establish a stronger position. Here, the record does not disclose if the other jurors were questioned as to the impact of Burmeister's remark. In my opinion, to determine the prejudicial impact, the other jurors should have been questioned to establish prejudice. Then, the true impact of Mrs. Burmeister's remarks would be known. At the supplemental transcript, pages 3 and 4, the trial court kindly and helpfully suggested to defense counsel that counsel make further inquiry, more in depth inquiry, if they were able to base their decision solely on the evidence, as they would hear it, and not the statement of Mrs. Burmeister about some charge she dropped. Unfortunately, the record does not disclose what impact there was because the record does not reflect any questioning of the other members of the jury panel. Under the state of this record, I must follow/vote pursuant to *Garton,* cited above, i.e., the trial court acted correctly.

### ISSUE THREE

I concur.